1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   BRIGHTON COLLECTIBLES, INC., a            CASE NO. 11cv2191-GPC(WMC)
     Delaware corporation,
12                                             **ORDER DENYING DEFENDANT**
                                      Plaintiff, **URBAN TREND, LLC'S MOTION**
13       vs.                                   **TO DISMISS AND DENYING**
                                               **DEFENDANT URBAN TREND**
14                                             **(HK)'S MOTION TO DISMISS**

15   WINSTON BRANDS, INC., an Illinois
     corporation; COLLECTIONS ETC., INC., an
16   Illinois corporation; LTD COMMODITIES,    [Dkt. Nos. 36, 50.]
     LLC, a Delaware corporation; and Does 1
17   through 10, inclusive,

18                                   Defendants.

19

20       Before the Court is Defendant Urban Trend, LLC's motion to dismiss the first amended

21   complaint for lack of subject matter jurisdiction.  (Dkt. No. 36.)  Plaintiff filed an opposition on

22   November 30, 2012.  (Dkt. No. 46.)  Defendant Urban Trend, LLC filed a reply on December 14,

23   2012.  (Dkt. No. 51.)  Also before the Court is Defendant Urban Trend (HK)'s motion to dismiss first

24   amended complaint for insufficient service.  (Dkt. No. 50.)  Plaintiff filed an opposition on December

25   21, 2012.  (Dkt. No. 52.)  Defendant filed a reply on January 4, 2013.  (Dkt. No. 53.)  After a review

26   of the briefs and the applicable law, the Court DENIES Urban Trend, LLC's motion to dismiss and

27   DENIES Urban Trend (HK)'s motion to dismiss.

28   / / / /

[11cv2191-GPC(WVG)]

1        **Background**

2        Plaintiff filed this action on September 19, 2011 alleging copyright infringement. (Dkt. No.

3   1.)   Subsequently, on August 8, 2012, Plaintiff filed a first amended complaint for copyright

4   infringement adding Defendants Urban Trend, LLC and Urban Trend (H.K.), Ltd.  (Dkt. No. 32.)

5   Plaintiff served Urban Trend (H.K.), located in Hong Kong, by service on Urban Trend, LLC's

6   registered agent Craig Barbarosh.  (Dkt. No. 50-2, Mote Decl. ¶ 2.)

7        Plaintiff Brighton Collectibles, Inc. ("Brighton") manufacturers and sells women's fashion

8   accessories, including handbags. (FAC ¶ 17.)  Brighton registered copyrights on several of its designs,

9   including the "Heart Conch" jewelry design registered with the Copyright Office effective December

10  31, 1997 and the "Charmaine Heart" jewelry design registered with the Copyright Office effective July

11  13, 2011.  (Id. ¶¶ 19, 21.)  On September 12, 2012, Urban Trend, LLC filed a motion to dismiss the

12  first amended complaint based on Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkt. No.

13  36.)  Plaintiff filed an opposition on November 30, 2012.  (Dkt. No. 46.)  Defendant filed a reply on

14  December 14, 2012.  (Dkt. No. 51.)

15       On December 10, 2012, Defendant Urban Trend (HK) filed a motion to dismiss first amended

16  complaint for insufficient service pursuant to Federal Rule of Civil Procedure 12(b)(5).  (Dkt. No. 50.)

17  Alternatively, Urban Trend (HK) requests that the Court order Plaintiff to serve through means

18  authorized by the Hague Convention.  Plaintiff filed an opposition on December 21, 2012.  (Dkt. No.

19  52.)  Urban Trend (UK) filed a reply on January 4, 2013.  (Dkt. No. 53.)

20       **Discussion**

21  **I.    Urban Trend, LLC's Motion to Dismiss First Amended Complaint for Lack of Subject**

22  **      Matter Jurisdiction and for Failure to State a Claim**

23  **      A.    Federal Rule of Civil Procedure 12(b)(1)**

24       Federal Rule of Civil Procedure 12(b)(1) allows a dismissal for "lack of subject matter

25  jurisdiction."  Fed. R. Civ. P. 12(b)(1).  A plaintiff has the burden to establish that subject matter

26  jurisdiction is proper.  Kokkonen v. Guardian Life Ins., Co., 511 U.S. 375, 377 (1994).

27       Under Rule 12(b)(1), a jurisdictional attack may either be "facial" or "factual."  White v. Lee,

28  227 F.3d 1213, 1242 (9th Cir. 2000).  When a defendant challenges jurisdiction "facially," all material

1   allegations in the complaint are assumed true, and the question for the court is whether the lack of

2   federal jurisdiction appears from the face of the pleading itself.  Thornhill Publ'g Co. v. Gen.l Tel.

3   Elecs., 594 F.2d 730, 733 (9th Cir. 1979);  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884,

4   891 (3d Cir.1977).  In a factual attack, the "defendant disputes the truth of the allegations that, by

5   themselves, would otherwise invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d

6   1035, 1039 (9th Cir. 2004).  In a factual attack, the "court may look beyond the complaint to matters

7   of public record without having to convert the motion into one for summary judgment."  White, 227

8   F.3d at 1242.  The court "need not presume the truthfulness of the plaintiff's allegations."  Id.  Once

9   the moving party has converted the motion to dismiss into a factual motion by presenting affidavits

10  or other evidence properly brought before the court, the party opposing the motion must furnish

11  affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."

12  Safe Air for Everyone, 373 F.3d at 1039 (quotation omitted).

13        A district court is not "permitted to resolve disputed factual issues bearing upon subject matter

14  jurisdiction in the context of a Rule 12(b)(1) motion "when 'the jurisdictional issue and the substantive

15  issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits.'"

16  Kingman Reef Atoll Invs., L.L.C. v. United States, 541 F.3d 1189, 1197 (9th Cir. 2008) (citation

17  omitted).  In one case, plaintiff filed a patent infringement claim against defendant.  Quantum Corp.

18  v. Sony Corp., 16 U.S.P.Q.2d 1447, 1450 (N.D. Cal. 1990).  The defendants moved to dismiss for lack

19  of subject matter jurisdiction over the subject matter and argued there was no infringing conduct.  Id.

20  The Court held that since the issue of jurisdiction and the merits of the case were intertwined, the

21  resolution of factual issues as to the infringing conduct was not appropriate on a motion for dismiss.

22  Id.  "[A] judge may consider evidence presented with respect to a jurisdictional issue and rule on that

23  issue, resolving factual disputes if necessary, only if the jurisdictional issue is separable from the

24  merits of the case.  Id. (citing Berardinelli v. Castle & Cooke, Inc., 587 F.2d 37 (9th Cir. 1978)).

25        To establish a prima facie case of copyright infringement, plaintiff must show "(1) ownership

26  of a valid copyright, and (2)  copying of constituent elements of the work that are original."  Range

27  Rd. Music, Inc. v. E. Coast Foods, Inc., 668 F.3d 1148, 1153 (9th Cir. 2012).

28        Here, Defendant Urban Trend, LLC filed a motion to dismiss the first amended complaint for

1 lack of subject matter jurisdiction arguing that it has never made, sold or distributed any of the

2 products accused of infringement.  Stated another way, Defendant contends that it has not engaged in

3 "copying of constituent elements of the work that are original."  See Range Rd. Music, Inc., 668 F.3d

4 at 1153.  In opposition, Plaintiff argues that the denial of liability is intertwined with the merits of the

5 case and therefore, the motion should be denied.

6     The Court concludes that the jurisdictional issue and the merits of the case are intertwined in

7 this motion.  Defendant's affidavit[1] stating that it has never made, sold or distributed any of the

8 products at issue goes to the merits of determining whether it copied Plaintiff's work.  Therefore,

9 resolution of factual issues to determine subject matter jurisdiction at this stage of the proceedings is

10 not proper.  The Court also notes that District Judge Bencivengo in the order granting Plaintiff's

11 motion for leave to file a first amended complaint to add Urban Trend, LLC stated that it is "not

12 persuaded that plaintiff's motion was brought in bad faith, or that consideration of evidence to defeat

13 plaintiff's new allegations is appropriate prior to the commencement of discovery."  Accordingly, the

14 Court DENIES Defendant Urban Trend, LLC's motion to dismiss for lack of subject matter

15 jurisdiction.

16     **B.     Federal Rule of Civil Procedure 12(b)(6)**

17     Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim

18 upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is

19 appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a

20 cognizable legal theory.  See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).

21 Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and

22 plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair

23 notice of what the . . . claim is and the grounds upon which it rests."  Bell Atlantic Corp. v. Twombly,

24 550 U.S. 544, 555 (2007).

25     A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations

26 as true, it contains enough facts to "state a claim to relief that is plausible on its face."  Ashcroft v.

27

28     [1]The affidavit was filed in opposition to Plaintiff's motion for leave to file an amended
complaint.  (Dkt. No. 26.)

- 4 -                    [11cv2191-GPC(WVG)]

1   Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  "A claim has

2   facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

3   inference that the defendant is liable for the misconduct alleged."  Id.  "Threadbare recitals of the

4   elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  "In sum,

5   for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable

6   inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."

7   Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).  In reviewing a

8   Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all

9   reasonable inferences in favor of the plaintiff.  al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

10          First, Defendant argues that the heightened pleading standard of fraud under Rule 9(b) applies

11  to a claim of alter ego liability and cites to a District of Nevada case.  District court cases in California

12  hold otherwise.  Ardente, Inc. v. Shanely, 07-4479 MHP, 2010 WL 546485, *4 (N.D. Cal. 2010)

13  (stating the alter ego is not a cause of action but a doctrine to determine the party upon whom liability

14  should be imposed.); Pac. Gas & Elec. Co. v. Jesse M. Lange Dist., Inc., 2005 WL 3507968, *3 (E.D.

15  Cal. 2005).  The Court agrees with the reasoning and follows the district court cases in California and

16  concludes that the heightened pleading standard of fraud does not apply to an allegation of alter ego.[2]

17          Courts apply the law of the forum state in determining whether a corporation is an alter ego

18  of another corporation.  See Towe Antique Ford Found. v. IRS, 999 F.2d 1387, 1391 (9th Cir. 1993).

19  To allege alter ego liability in California, a plaintiff must show "(1) that there be such unity of interest

20  and ownership that the separate personalities [of the two entities] no longer exist and (2) that, if the

21  acts are treated as those of the corporation alone, an inequitable result will follow."  Mesler v. Bragg

22  Mgmt. Co., 39 Cal.3d 290, 300 (1985).

23          "Factors that can be used to support the first element, unity of interest, include commingling

24  of funds, failure to maintain minutes or adequate corporate records, identification of the equitable

25  owners with the domination and control of the two entities, the use of the same office or business

26

27          [2]In its reply, Defendant's cite to dicta in a Ninth Circuit case where the court stated that "[i]n
    all alter ego determinations an element of fraud or misrepresentation also exists."  A. Dariano & Sons.,
28  Inc v. Dist. Council of Painters No. 33, 689 F.2d 514, 519 (9th Cir. 1989).  However, in the case, the
    Ninth Circuit did not conduct an alter ego analysis on review.

1    locations, the identical equitable ownership of the two entities, the use of a corporation as a mere shell,

2    instrumentality or conduit for a single venture or the business of an individual, and the failure to

3    adequately capitalize a corporation." Pac. Maritime Freight, Inc. v. Foster, 10cv578-BTM(BLM),

4    2010 WL 3339432, *6 (S.D. Cal. Aug. 24, 2010) (quoting Associated Vendors, Inc. v. Oakland Meat

5    Co., 210 Cal. App. 2d 825, 838–40 (1962)).

6         Defendant argues that Plaintiff has not alleged sufficient facts to support alter ego liability.

7    Plaintiff contends that it has properly asserted alter ego liability.  Alternatively, if the Court is inclined

8    to grant Defendant's motion to dismiss as to alter ego liability.  Plaintiff requests that it be allowed to

9    take discovery pursuant to Federal Rule of Civil Procedure 56(d).

10        In this case, the first amended complaint alleges that Urban Trend, LLC and Urban Trend

11   (H.K.) maintain a permanent office and regularly conducts business in Newport Beach, California.

12   (Dkt. No. 32, FAC ¶ 13.)  Plaintiff is informed and believes both entities maintain business records

13   at the Newport Beach office; that Robert Kushner is the CEO of both companies; that both operate the

14   exact same consumer products design, development and distribution that goes by the trade name

15   "Urban Trend"; that both Defendants are listed on their website as contacts for "Urban Trend"; and

16   that the entities were formed in an attempt to insulate Urban Trend and Mr. Kushner from liability for

17   acts that are undertaken at their direction and on their behalf.  (Id. ¶ 14.)  Plaintiff also allege that there

18   is such unity of interest and ownership of the Urban Trend defendants that the separate personalities

19   of the two entities no longer exist and the failure to disregard their separate identities would result in

20   fraud or injustice.  (Id.)

21        Federal Rule of Civil Procedure 8 requires a plaintiff to set forth a short and plain statement

22   about the claim and "give the defendant fair notice of what the . . . claim is and the grounds upon

23   which it rests." Twombly, 550 U.S. at 555.  The Court concludes that Plaintiff has sufficiently alleged

24   alter ego liability.  Accordingly, the Court DENIES without prejudice Urban Trend, LLC's motion to

25   dismiss for failure to state a claim.

26   / / / /

27   / / / /

28   / / / /

1   **II.    Urban Trend (HK)'s Motion to Dismiss First Amended Complaint for Insufficient**

2          **Service**

3          **A.    Federal Rule of Civil Procedure 12(b)(5)**

4          Federal Rule of Civil Procedure 12(b)(5) authorizes a defendant to move to dismiss the

5   complaint for insufficient service of process.  Fed. R. Civ. P. 12(b)(5).  Once a party challenges

6   service, the plaintiff bears the burden to show that service was valid under Rule 4.  Brockmeyer v.

7   May, 383 F.3d 798, 801  (9th Cir. 2004).

8          Federal Rule of Civil Procedure 4 provides three ways to effectuate serve on a foreign

9   corporation, partnership or other unincorporated association.   Fed. R. Civ. P. 4.  Service can be

10  effective pursuant to "(1) the law of the state where the district court is located or of the state where

11  service is effected, see Fed. R. Civ. P. 4(e)(1); (2) by delivering a copy of the summons and complaint

12  in a judicial district of the United States to 'an officer, a managing or general agent, or to any other

13  agent authorized by appointment or by the law to receive service of process[.]' Fed. R. Civ. P. 4(h)(1);

14  or (3) an internationally agreed method for effective service such as the Hague Convention.  See id.

15  at 4(f)(1)." SVC-Napa, L.P. v. Strategy Resort Fin., Inc., C 06-03561 SI, 2006 WL 2374718, *1 (N.D.

16  Cal. Aug. 16, 2006).

17         The Court has broad discretion whether to dismiss or retain the action if Plaintiff is unable to

18  satisfy its burden of demonstrating effective service.  If the Court retains the action, it quashes the

19  service that was ineffectively made on the defendant and provides the plaintiff the opportunity to serve

20  again.  Id. (citation omitted); United States v. Distribuidora Batiz CGH, S.A. De C.V., No. 07cv370

21  WQH(JMA), 2009 WL 2487971, *9 (S.D. Cal. Aug. 10, 2009); Schagene v. Northrop Grumman, 11

22  CV1642 AJB (NLS), 2012 WL 216531 (S.D. Cal. Jan. 24, 2012).

23         Urban Trend (HK) argues that Plaintiff did not properly serve it under any of the three methods

24  mentioned.

25         **B.    Federal Rule Civil Procedure 4(e)(1)**

26         Defendant argues that service through the registered agent of Urban Trend, LLC on Urban

27  Trend (HK) was not proper because Urban Trend, LLC  is not a "general manager" authorized to

28  receive service of process.  Specifically, Urban Trend, LLC contends that it has no involvement in

1  women fashion accessories and so it does not create a channel for a continual flow of business into

2  California.  Plaintiff contends that Urban Trend, LLC is the general manager for Urban Trend (HK).

3     "A federal court does not have jurisdiction over a defendant unless the defendant has been

4  served properly under Fed. R. Civ. P. 4."  Direct Mail Specialists v. Eclat Computerized Techs., Inc.,

5  840 F.2d 685, 688 (9th Cir. 1988) (citing Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982)).

6  However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives

7  sufficient notice of the complaint."  Id. (citing United Food & Commercial Workers Union v. Alpha

8  Beta Co., 736 F.2d 1371, 1382 (9th Cir. 1984)).

9     Federal Rule of Civil Procedure 4(e)(1) provides that service can be made pursuant to

10  California law.  The California Code of Civil Procedure provides that process may be served on a

11  corporation "by delivering a copy of the summons and the complaint . . . [t]o . . . a general manager,

12  or person authorized by the corporation to receive service of process."  Cal. Code Civ. Proc. §

13  416.10(b); see also Cal. Corp. Code § 2110 (a foreign corporation may be served on a "general

14  manager in this state.").

15     A general manager has been interpreted to "include[ ] any agent of the corporation 'of

16  sufficient character and rank to make it reasonably certain that the defendant will be apprised of the

17  service made."  Gibble v. Car-Lene Research, Inc., 67 Cal. App. 4th 295, 313 (1998) (quoting Eclipse

18  Fuel Eng'g Co. v. Superior Court, 148 Cal. App. 2d 736, 745-46 (1957)).  "Service of process under

19  Rule 4 is not limited solely to officially designated officers, managing agents, or agents appointed by

20  law for the receipt of process."  Direct Mail Specialists, 840 F.2d at 688.  General managers may be

21  domestic distributors, salesmen or advertisers, or customer service liaisons of foreign manufacturers

22  even if the foreign-domestic relationship is "casual" or "non-exclusive" as long as the domestic entity

23  provides the foreign entity an open channel for the regular flow of  business from the foreign entity

24  into California.  See Khachatryan v. Toyota Motor Sales, USA, Inc., 578 F. Supp. 2d 1224, 1226 (C.D.

25  Cal. 2008) (Toyota America, a distributor, was held to be a "general manager" for Toyota Japan as its

26  relationship with Toyota America gives it the business advantages that it would have enjoyed if it

27  conducted business in America); Halo 8 II Elecs., Inc. v. Bel Fuse Inc., 07-6222 RMW, 2010 WL

28  2605195 (N.D. Cal. June 28, 2010) (service on subsidiary of foreign company was proper as subsidiary

was the American face of Defendant which provided opportunity for regular contact with U.S. customers and a channel for a continue flow of business into the U.S.); Gray v. Mazda 911 Motor of America, Inc., 560 F. Supp. 2d 928 (C.D. Cal. 2008) (distributor was general manager for manufacturer located in Japan).

In a seminal California case, Smith & Wesson, a Massachusetts corporation, had an arrangement with Walter Lookabaugh, who conducted his business in California, for the distribution and sale of its products throughout California. Cosper v. Smith & Wesson Arms Co., 53 Cal. 2d 77, 82 (1959). Lookabaugh, as a manufacturer's non-exclusive representative, was the distributor of Smith & Wesson's guns, who was actively engaged in promoting the sale of guns and earned commissions. Id. at 80-81. Lookabaugh promoted sales, serviced dealer accounts, distributed advertising materials which Smith and Wesson furnished. Id. at 82. The relationship was found to be of "sufficient character and rank to make it reasonably certain" that Smith and Wesson would be apprised of the service of process. Id. at 83. "[T]he essential factor is that Lookabaugh in his selling and advertising activities was performing services for Smith and Wesson and providing it with the opportunity for 'regular contact with its customers and a channel for a continuous flow of business into the state.'" Id. at 84 (citation omitted). The California Supreme Court held that service through Lookabaugh, the non-exclusive sales distributor, was proper because it was Smith and Wesson's "general manager." Id. at 83-84.

However, courts have held that service was not proper where the domestic entity served did not have a connection with the foreign company. In Khachatryan, the Court noted that if hypothetically, Toyota had a subsidiary in California whose exclusive business was importing koi fish, that subsidiary could not be considered the general manager of Toyota's American automotive activities. Khachatryan, 578 F. Supp. 2d at 1228 n. 1. In another case, the court determined that service was not proper on a foreign corporation. Tang v. S Clean Systems AG, D52943, 2008 WL 5352253 (Cal. Ct. App. Dec. 23, 2008). Defendant CSAG was a German corporation headquartered in Germany while ICS was a Taiwanese corporation that distributed CSAG's products in Taiwan. Id. at 1. Plaintiff was terminated from his employment in Taiwan as a general manager for ICS. Id. Plaintiff believed that CSAG wrongfully persuaded ICS to terminate him. Id. Plaintiff filed a lawsuit

1   against CSAG for causes of action related to his termination.  Id.  He did not serve CSAG in Germany

2   but its subsidiary, CSI, a Nevada corporation headquartered in California and an exclusive distributor

3   for CSAG's products in the U.S. Id.  The summons was delivered to CSI's agent for service of process.

4   Id.  The court held that CSI was not a general manager of CSAG for purposes of service because

5   neither CSI nor CSI's agent for service of process had management responsibilities regarding the

6   operations at issue in Plaintiff's lawsuit.  Id. at 5.  CSI sold CSAG's products in California but had no

7   involvement with CSAG's products or employment practices.  Id.  The court affirmed the trial court's

8   ruling that CSAG was not properly served via CSI.  Id.

9         In this case, Plaintiff served Barbarosh who does not hold an executive  position and is not

10   authorized by Urban Trend (HK) to accept service on its behalf.  (Dkt. No. Kusherner Decl. ¶¶ 2-3.)

11   Both Urban Trend entities are each described as a "consumer products design and development

12   company offering retail solution."  (Dkt. No. 52, Wesley Decl., Ex. 1.)  Without differentiating the

13   corporate entity, a press release states "Urban Trend is headquartered in Hong Kong, with offices in

14   Newport Beach, California and Mingbo, China."  (Id.)  Moreover, an article from HomeWorld

15   Business states, "Hong-Kong based Urban Trend has been selling directly to retailers in the U.S. for

16   more than seven years, and prior to that was manufacturing product for importers.  Responding to

17   pricing pressures, founder Robert G. Kushner decided to market the company's product itself.  The

18   U.S. branch of the business was opened in Newport Beach to handle sales and logistics and provide

19   support to the design and manufacturing operation in Hong Kong . . . ."  (Id., Ex. 3.)  It appears that

20   Urban Trend, LLC, the domestic entity, provides Urban Trend (HK), the foreign entity, an open

21   channel for the regular flow of  business from the foreign entity into California.  See Cosper, 53 Cal.

22   2d at 83-84.  Although Urban Trend, LLC may not sell the product at issue, Urban Trend, LLC's

23   relationship with Urban Trend (HK) would make it reasonably certain that Urban Trend, (HK) would

24   be apprised of the service of process made.  See Gibble, 67 Cal. App. 4th at 313.  Accordingly, the

25   Court concludes that service was proper through Urban Trend, LLC as a general manager for Urban

26   Trend (HK).  Even if service was not proper under Rule 4(e)(1), the Court concludes that service of

27   process was proper under Rule 4(h)(1)(B).

28   / / / /

1      **C.      Federal Rule of Civil Procedure 4(h)(1)(B)**

2          Urban Trend (HK) argues that Plaintiff did not effect proper service when it served Craig

3   Barbarosh because he did not have actual or implied authority to accept service on Urban Trend

4   (HK)'s behalf.  Plaintiff argues that it did effectuate proper service because Urban Trend, LLC is a

5   "managing or general agent" of Urban Trend (HK).

6          Federal Rule of Civil Procedure 4(h)(1)(B) states that a foreign corporation must be served by

7   "delivering a copy of the summons and of the complaint to an officer, a managing or general agent,

8   or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R.

9   Civ. P. 4(h)(1)(B).

10         According to the Ninth Circuit,

11         Despite the language of the Rule, service of process is not limited solely to
           officially designated officers, managing agents, or agents appointed by law for the
12         receipt of process. The rules are to be applied in a manner that will best effectuate
           their purpose of giving the defendant adequate notice. Thus, the service can be
13         made "upon a representative so integrated with the organization that he will know
           what to do with the papers. Generally, service is sufficient when made upon an
14         individual who stands in such a position as to render it fair, reasonable and just to
           imply the authority on his part to receive service. Generally, [t]he determination of
15         whether a given individual is a 'managing or general agent' depends on a factual
           analysis of that person's authority within the organization.

16

17  Direct Mail Specialists, Inc., 840 F.2d at 688 (citations omitted).  In Direct Mail Specialists, the court

18  held that service on a receptionist was sufficient where she was "the only employee in the office when

19  the process server arrived, demonstrating that more than minimal responsibility was assigned to her."

20  Id. at 689.

21         In another case, German Defendant, Roche Diagnostics GmbH ("RDG") moved to dismiss

22  Plaintiff's attempted service on RDG by serving the general counsel of its domestic sister-subsidiary,

23  Roch Diagnostics Corporation ("RDC").  Troll Busters, LLC v. Roche Diagnostics GMBH, 11cv56-

24  IEG(WMC), 2011 WL 3859721, *9 (S.D. Cal. 2011).  The court explained that there was a close

25  relationship between the two companies since both were subsidiaries of Roche Holding AG, both do

26  business under the name Roche Applied Science and both shared the same website.  Id.  The Court

27  concluded that the general counsel of RDC can be considered a "general agent" for service of process

28  on RDG under federal law or state law.  Id.

[11cv2191-GPC(WVG)]

1    Similarly, there appears to be a close relationship between Urban Trend LLC and Urban Trend

2   (HK). They both share the same website. (Dkt. No. 52, Exs. 1-3.) The website describes the two

3   defendants collectively providing the same service and product. Id. It states that Urban Trend is

4   "headquartered in Hong Kong, with offices in Newport Beach, CA. (Dkt. No. 52 at 30.) In an October

5   12, 2009 article in Home World Business, Urban Trend LLC's President stated that the "U.S. branch

6   of the business was opened in Newport Beach to handle sales and logistics and provide support to the

7   design and manufacturing operation in Hong Kong." (Id. at 45.) Barbarosh is the designated agent

8   for service of process for Urban Trend, LLC and he would know what to do with the papers. See

9   Direct Mail Specialists, 840 F.2d at 688.

10    The Court concludes that service of process was proper under Federal Rule of Civil Procedure

11   4(h)(1)(B). Accordingly, the Court DENIES Defendant's motion to dismiss for insufficient service.

12                                    **Conclusion**

13    Based on the above, the Court DENIES Urban Trend, LLC's motion to dismiss for lack of

14   subject jurisdiction and for failure to state a claim and DENIES Urban Trend (HK)'s motion to dismiss

15   for insufficient service.

16    IT IS SO ORDERED.

17

18   DATED: January 30, 2013

19

20   HON. GONZALO P. CURIEL
     United States District Judge

21

22

23

24

25

26

27

28